No. 83–712. NEW JERSEY *v.* T. L. O. Sup. Ct. N. J. [Certiorari granted, 464 U. S. 991.] Case restored to calendar for reargument. In addition to the question presented by the petition for writ of certiorari and previously briefed and argued, the parties are requested to brief and argue the following question: "Did the assistant principal violate the Fourth Amendment in opening respondent's purse in the facts and circumstances of this case?"

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

In its decision in this case, the New Jersey Supreme Court addressed three distinct questions: (1) what is the proper standard for judging the reasonableness of a school official's search of a student's purse; (2) on the facts of this case, did the school official violate that standard; and (3) whether the exclusionary rule bars the use in a criminal proceeding of evidence that a school official obtained in violation of that standard. The Supreme Court held (1) that the correct standard is one of reasonable suspicion rather than probable cause; (2) that the standard was violated in this case; and (3) that the evidence obtained as the result of a violation may not be introduced in evidence against T. L. O. in any criminal proceeding, including this delinquency proceeding.

New Jersey's petition for certiorari sought review of only the third question.[1]  The reasons why it did not seek review of either of the other two questions are tolerably clear.  There is substantial agreement among appellate courts that the New Jersey Supreme Court applied the correct standard, and it is apparently one that the New Jersey law enforcement authorities favor.  As far as the specific facts of the case are concerned, presumably New Jersey believed that this Court is too busy to take a case just for the purpose of reviewing the State Supreme Court's application of this standard to the specific facts of this case.

The single question presented to the Court has now been briefed and argued.  Evidently unable or unwilling to decide the question presented by the parties, the Court, instead of dismissing the writ of certiorari as improvidently granted, orders reargument directed to the questions that New Jersey decided not to bring here.  This is done even though New Jersey *agrees* with its Supreme Court's resolution of these questions, and has no desire to seek reversal on those grounds.[2]  Thus, in this nonadversarial context, the Court has decided to plunge into the merits of the Fourth Amendment issues despite the fact that no litigant before it wants the Court's guidance on these questions.  Volunteering unwanted advice is rarely a wise course of action.

Of late, the Court has acquired a voracious appetite for judicial activism in its Fourth Amendment jurisprudence, at least when it comes to restricting the constitutional rights of the citizen.  In *United States* v. *Leon, ante,* at 905, and *Massachusetts* v. *Sheppard, ante,* at 988, n. 5, the Court fashioned a new exception to the exclusionary rule despite its acknowledgment that narrower

---

[1] The petition presented a single question for review: "Whether the Fourth Amendment's exclusionary rule applies to searches made by public school officials and teachers in school."

[2] At oral argument, the following colloquy took place between counsel for New Jersey and the bench:

"QUESTION: Well, do you think it is open to us to deal with the reasonableness of the search?

"MR. NODES: I believe that could be considered a question subsumed within the—

"QUESTION: But it wasn't your intention to raise it?

"MR. NODES: It wasn't our intention to raise it because we agree with the standard that was set forth by the New Jersey Supreme Court.  We feel that that is a workable standard."  Tr. of Oral Arg. 7.

grounds for decision were available in both cases.[3] In *United States* v. *Karo, ante,* p. 705, in order to reverse a decision requiring the suppression of evidence, the Court on its own initiative made an analysis of a factual question that had not been presented or argued by either of the parties and managed to find a basis for ruling in favor of the Government. In *Segura* v. *United States, ante,* p. 796, two creative Justices reached the surprising conclusion that an 18–20-hour warrantless occupation of a citizen's home was "reasonable," despite the fact that the issue had not been argued and the Government had expressly conceded the unreasonableness of the occupation. And, as I have previously observed, in recent Terms the Court has elected to use its power of summary disposition exclusively for the benefit of prosecutors.[4] In this case, the special judicial action is to order the parties to argue a constitutional question that they have no desire to raise, in a context in which a ground for decision that the Court currently views as nonconstitutional is available,[5] and on which the State's chief prosecutor believes no guidance from this Court is necessary.

I believe that the adversary process functions most effectively when we rely on the initiative of lawyers, rather than the activism of judges, to fashion the questions for review. I respectfully dissent.

---

[3] See *ante,* at 962–963 (STEVENS, J., concurring in judgment in *Sheppard* and dissenting in *Leon*).

[4] See *Florida* v. *Meyers,* 466 U. S. 380, 385–386, and n. 3 (1984) (STEVENS, J., dissenting).

[5] We are told that questions concerning the remedies for a Fourth Amendment violation are not constitutional in dimension. *United States* v. *Leon, ante,* at 905–906. Apparently, this Court has imposed the exclusionary rule on the States as a result of the Fourth Amendment's "invisible radiations," *Keeton* v. *Hustler Magazine, Inc.,* 465 U. S. 770, 780, n. 12 (1984), which act to somehow give the Court nonconstitutional supervisory powers over the state courts. My own view is different. See *ante,* at 978, and n. 37 (STEVENS, J., concurring in judgment in *Sheppard* and dissenting in *Leon*).