David TARTER, et al.,
Plaintiffs-Appellants,

v.

William RAYBUCK, et al.,
Defendants-Appellees.

No. 83–3174.

United States Court of Appeals,
Sixth Circuit.

Argued March 6, 1984.

Decided Aug. 31, 1984.

George B. Vasko (argued), Akron, Ohio, for plaintiffs-appellants.

Dennis M. Whalen (argued), Cuyahoga Falls, Ohio, for defendants-appellees.

Before MERRITT and KRUPANSKY, Circuit Judges and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This action was brought under 42 U.S.C. § 1983 by David Tarter, and his parents, Judy and Dennis Tarter. The defendants were five administrators of the Cuyahoga Falls City School District, William Raybuck, David E. Rump, William Spargur, Marianne Rovnyak, and Dr. Harold E. Wil-

son, and the Cuyahoga Falls Board of Education. The complaint alleged that David, while a student at Cuyahoga Falls High School, had been subjected to an unlawful search by the defendant school administrators, and that David, Judy and Dennis Tarter had been falsely imprisoned by the school administrators. The complaint also sought an order compelling the defendant school board to reinstate David as a student at the Cuyahoga Falls High School. Defendants counterclaimed seeking costs and attorneys fees.

This suit was tried in the district court on January 3, 1983. At the close of plaintiffs' case, the district court granted a directed verdict in favor of defendants Rovnyak, Wilson and the Board of Education, and the trial continued. The district court issued its findings of fact and conclusions of law reported in *Tarter v. Raybuck*, 556 F.Supp. 625 (N.D.Ohio 1983), and rendered judgment in favor of defendants. In addition, the court found that plaintiff's cause of action was frivolous, unreasonable or without foundation, and awarded defendants attorneys fees pursuant to 42 U.S.C. § 1988.[1] On appeal, plaintiffs make two contentions: (1) that the district court erred in holding that the search of David Tarter was not unconstitutional; and (2) that the district court erred in awarding attorneys fees against the plaintiffs.

### I.

On March 3, 1981 David Tarter was a junior at Cuyahoga Falls High School. Upon his arrival at school that morning he went to a designated smoking area in a parking lot adjacent to the high school building. That day three defendants, David Rump, the Administrative Principal, and unit principals William Raybuck and William Spargur had undertaken surveillance of the smoking area, as a result of reports previously received regarding alleged drug use and vandalism by students while in the smoking area.

The administrators observed students smoking cigarettes or marijuana, and the exchange of money and plastic bags which they believed contained marijuana, including an exchange between David Tarter and Michael Cosner. Thus, the school officials converged upon the smoking area and directed a number of students, including David Tarter, to the faculty lounge. Some students were released immediately; however, the school officials undertook questioning those students they suspected involved in illegal activity. In the meantime the local police were called to the scene. In addition, a number of students, including Tarter, were given forms to sign indicating notice of intent to suspend.

The school officials requested several students, including Tarter, to empty their coat pockets; all did so. No incriminating evidence was found on Tarter. However, Raybuck testified he detected an odor of marijuana on Tarter's breath. Thereafter, Unit Principal Raybuck informed Tarter and three others that they were going to be suspended. He then left to attempt to call the parents or guardian of each student.

During the course of these events, the police arrived, conducted a search of several students, and took several away. Mr. Raybuck then took David Tarter to the office, and after a conversation with William Spargur, advised Tarter of what he had seen, and indicated the belief that Tarter had sold marijuana to Michael Cosner. Mr. Raybuck informed David Tarter that he wished to conduct a further search. He then took Tarter to the "clinic", a small room near the office, to conduct the search. Defendant Spargur was also present while Ms. Rovnyak stood outside the door of the "clinic". Pursuant to defendant's request, David Tarter emptied his pockets, removed his jacket, boots and shirt. No incriminating evidence was found. Raybuck and Spargur then asked Tarter to remove his

---

1. On June 10, 1983 the district court issued an order granting defendants $9,668.00 in attorneys fees and $1,179.90 in costs.

pants; Tarter refused, the search ceased, and the police were summoned.[2]

A few minutes later, David's parents arrived and entered the clinic. Defendants Ms. Rovnyak and Mr. Rump also entered the clinic at this time. During discussions concerning the morning's events, the Tarter parents were advised that the police had been summoned. Mr. Tarter advised his son to put on his clothes, and stated that they were going home. The school officials requested they wait until the police arrived; the Tarters refused. According to the district court's findings, the plaintiffs "left the premises without interference from any of the defendants." 556 F.Supp. at 628.

On March 3, 1981, the day of the incident in question, David Tarter was suspended from school for a period of ten days for possession and/or use of marijuana based upon the observations of defendants Raybuck, Spargur and Rump.

David Tarter was subsequently expelled for the balance of the semester by the Superintendent of Schools. The Cuyahoga Falls School Board conducted a hearing on David Tarter's appeal of the expulsion, and affirmed the decision of the Superintendent. The Tarters were represented by counsel at the hearing.

## II.

Plaintiffs challenge the constitutionality of the school officials' search of David Tarter. Thus, we are presented with the question of the role of the fourth amendment in the context of the public school system.

More precisely, we consider whether defendants Raybuck and Spargur violated David Tarter's constitutional rights when they searched his person on the premises of Cuyahoga Falls High School on March 3, 1981.

The district court concluded David Tarter "consented to the search conducted by and at the request of defendants Raybuck and Spargur ... [and] the ensuing search did not violate a constitutionally protected right of the plaintiff David Tarter." 556 F.Supp. at 628. Alternatively, it addressed the question of the reasonableness of the search in the context of the fourth amendment constraints "assuming arguendo that the plaintiff David Tarter was intimidated by the presence of his high school principals to consent involuntarily to the search...." *Id.* at 629. The court concluded the search was reasonable under the circumstances, and even assuming the absence of consent David Tarter's fourth amendment rights were not violated. *Id.* at 630.

■■■ We are not as convinced as the district court that David Tarter knowingly and intelligently waived his constitutional rights when he "consented" to be searched, and we are not inclined to resolve this case on the basis of consent. The burden would be upon defendants to demonstrate such a voluntary relinquishment of constitutional rights by plaintiff. There is a presumption against the waiver of constitutional rights. That he may have acquiesced in the initial search does not necessarily demonstrate the relinquishment of his rights to challenge his initial search. In fact, David

2. The defendants' request to have plaintiff remove his pants was apparently based upon events which transpired earlier in the day. The district court noted:

> In an earlier confrontation on the morning of March 3, 1981, the defendant William Spargur was handed a plastic bag of marijuana cigarettes concealed under the trousers of student Dave Richardson who had been seen engaging in an exchange of what appeared to be marijuana cigarettes with a student in a transaction separate from the Tarter-Cosner exchange.
>
> Prior to the Spargur-Raybuck-Tarter confrontation in the clinic, William Raybuck was

> present when an officer of the Cuyahoga Falls Police Department began a search of Greg Kmet, another student observed smoking marijuana in the pit on March 3, 1981. The police officer asked Kmet to unbutton his pants. After Kmet complied, with some hesitation, and lowered his pants, the police officer and Raybuck observed a big bulge in his underwear which was patted by the police officer with ensuing crinkling-like paper sound. At that point Kmet stated, "You're not searching me any more," and bolted from the school with the police officer in pursuit.

556 F.Supp. at 627.

Tarter's testimony indicates he only submitted to the search because he was afraid. Furthermore, there is no indication he even was aware that he might have had a constitutional right to object to a search. His eventual refusal to be strip-searched fully is not necessarily an indication of a waiver of his rights, rather it is equally likely that personal modesty or embarrassment resulted in his ultimate refusal to permit the search to continue.

■ It is beyond peradventure that school children do not shed their constitutional rights at the school house gate. *Tinker v. Des Moines Independent Comm. School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). It is well recognized that school officials are subject to constitutional restraints as state officials. *See, e.g., Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (due process hearing rights for school suspensions); *Tinker, supra.* (First Amendment rights available to students subject to application in light of special circumstances of the school environment). School officials, employed and paid by the state and supervising children, are agents of the government and are constrained by the Fourth Amendment. *Horton v. Goose Creek Indep. School District*, 690 F.2d 470 (5th Cir.1982) *cert. denied,* — U.S. —, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983) (per curiam) (challenge to the use of canine contraband detection program); *State in Interest of T.L.O.*, 94 N.J. 331, 463 A.2d

934, 943 (1983) *cert. granted; sub nom. State of New Jersey v. T.L.O.*, — U.S. —, 104 S.Ct. 480, 78 L.Ed.2d 678 (1983) *scheduled for reargument* (1984).[3] *Accord. Bellnier v. Lund*, 438 F.Supp. 47 (N.D.N.Y.1977); *State v. Young*, 234 Ga. 488, 216 S.E.2d 586, *cert. denied*, 423 U.S. 1039, 96 S.Ct. 576, 46 L.Ed.2d 413 (1975); *People v. Scott*, 34 N.Y.2d 483, 358 N.Y.S. 2d 403, 315 N.E.2d 466 (1974).[4]

The fourth amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated and no warrants shall issue but upon probable cause...." "The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967) (warrantless administrative search of private residence).

■ However, the basic concern of the fourth amendment is reasonableness, *see Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968), and reasonableness depends upon the particular circumstances. Although incursions on the fourth amendment should be guarded jealously, not infrequently the ordinary requirements of the fourth amendment are

---

3. Unlike this case the *New Jersey* case initially presented the question of whether the exclusionary rule barred the use in a criminal proceeding of evidence obtained in a search of the student by a school official. In scheduling the case for reargument, the Court asked the parties to brief and argue the following question: "Did the assistant principal violate the Fourth Amendment in opening respondent's [student's] purse in the facts and circumstances of this case?" Although not in the context of an action pursuant to 42 U.S.C. § 1983, the Supreme Court next term will consider virtually the same question presented to this Court in the case at bar.

4. Some courts have avoided the application of fourth amendment principles to school teachers and administrators under the doctrine of *in loco parentis. See Mercer v. State*, 450 S.W.2d 715

(Tex.Civ.App.1970). Under this theory the school official does not act as an agent of the state, rather he stands "in the shoes of the parent," and thus is not constrained by the fourth amendment. *See generally* Trosch, Williams & DeVore, "Public School Searches and the Fourth Amendment," 11 J.Law & Educ. 41, 44–45 (1982). This reasoning is unsound and we reject it as have courts and commentators. *See* cases cited in text immediately preceding this note. *See also* 3 LaFave, *Search and Seizure*, § 10, 11 (1978); Buss "The Fourth Amendment and Searches of Students in Public Schools," 59 Iowa L.Rev. 739, 767 (1974). As the court in *Horton, supra*, noted: "We think it beyond question that the school official ... is an agent of the government and is constrained by the fourth amendment." 690 F.2d at 480.

modified to deal with special circumstances. *See, e.g., Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (administrative search); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("stop and frisk" search upon reasonable suspicion); *Camara, supra.*

Thus, as other courts have done, we balance the fourth amendment rights of individual students with the interest of the state and the school officials in the maintenance of a proper educational environment to educate today's youth. *See, e.g., Horton, supra,* 690 F.2d at 480; *State in the Interest of T.L.O., supra.* For an interesting discussion of the balancing approach concept see Trosch, Williams and DeVore, "Public School Searches and the Fourth Amendment," 11 J.Law & Educ. 41, 50 (1982). Indeed, as the Supreme Court has emphasized "education is perhaps the most important function of state and local governments." *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954).

The Fifth Circuit has noted:

> The public school presents special circumstances that demand similar accommodations of the usual fourth amendment requirements. When society requires large groups of students, too young to be considered capable of mature restraint in their use of illegal substances or dangerous instrumentalities, it assumes a duty to protect them from dangers posed by anti-social activities— their own and those of other students— and to provide them with an environment in which education is possible. To fulfill that duty, teachers and school administrators must have broad supervisory and disciplinary powers.

*Horton, supra,* 690 F.2d at 480 (footnote omitted). *See also People v. Overton,* 20 N.Y.2d 360, 283 N.Y.S.2d 22, 229 N.E.2d 596 (1967). ("[S]chool authorities have an obligation to maintain discipline over the students .... Parents, who surrender their children to this type of environment, in order that they may continue development both intellectually and socially, have

a right to except certain safeguards .... Thus, it is the affirmative obligation of the school authorities to investigate any charge that a student is using or possessing narcotics and to take appropriate steps if the charge is substantiated.")

Thus, we balance the fourth amendment interests of David Tarter with the legitimate concerns of public school officials in maintaining an orderly school conducive to the educational advancement of its students and determine when a school official may search a student in the absence of a warrant.

The prevailing view is that school officials may constitutionally conduct a search directed at a student under their supervision upon a quantum of evidence short of that which is needed for the usual police search. *Horton, supra,* 690 F.2d at 481. *See* 3 LaFave, *Search and Seizure,* § 10.-11, at 456 (1978). Typically the quantum of evidence is characterized as "reasonable cause" or "reasonable suspicion." *See Horton, supra,* at 481; LaFave, *supra,* § 10.11 at 456 and cases cited therein.

■ We hold that·a school official or teacher's reasonable search of a student's person does not violate the student's fourth amendment rights, if the school official has reasonable cause to believe the search is necessary in the furtherance of maintaining school discipline and order, or his duty to maintain a safe environment conducive to education. *Cf. Horton v. Goose Creek, supra,* 690 F.2d at 480; *State in the Interest of T.L.O., supra,* 463 A.2d at 941; *State v. McKinnon,* 88 Wash.2d 75, 81, 558 P.2d 781, 784 (1977) (search reasonable if school official has reasonable grounds to believe search is necessary in the aid of maintaining school discipline and order). We note that not only must there be a reasonable ground to institute the search, the search itself must be reasonable. Thus, for example, the authority of the school official would not justify a degrading body cavity search of a youth in order to determine whether a student was in possession of contraband in violation of school rules. There the fourth amendment and privacy

interests of the youth would clearly outweigh any interest in school discipline or order which might be served by such a search. In *Doe v. Renfrow*, 631 F.2d 91, 92–93 (7th Cir.1980) *cert. denied*, 451 U.S. 1022, 101 S.Ct. 3015, 69 L.Ed.2d 395 (1981) the court noted: "[i]t does not require a constitutional scholar to conclude that a nude search of a thirteen-year-old child is an invasion of constitutional rights of some magnitude. More than that: it is a violation of any known principle of human decency." [5] "We suggest as strongly as possible that the conduct herein described exceeded the 'bounds of reason' by two and a half country miles." 631 F.2d at 93.[6]

■ The determination of whether a school official's search is reasonable and based upon reasonable cause must be determined upon the facts and circumstances of each particular case. However, we caution to note that federal courts should not become entwined in the day to day decision making of teachers and school administrators. *Wood v. Strickland, supra* 420 U.S. at 326, 95 S.Ct. at 1003. The responsible school official must be afforded the necessary discretion to carry out his duties.

■ The defendants in this case, Raybuck and Spargur, themselves had observed activity they reasonably believed to indicate the use and sale of marijuana, activity which plainly constituted a violation of a well established policy. Thus, they had personally observed the incident, and had particularized suspicion of specific individuals including David Tarter. Furthermore, they were not making a general search of a large group of students. *Cf. Horton, supra; Renfrow, supra.* The information they had—their personal obser-

vations—was obviously reliable. In addition to their personal observations, another student, Michael Cosner, claimed he had purchased a marijuana cigarette from a student he identified in the school yearbook as David Tarter. 556 F.Supp. at 627.

Accordingly, we hold that under the particular circumstances of this case the school officials had reasonable cause to search the plaintiff. Furthermore, the search actually conducted in this case itself was reasonable under the circumstances.

Plaintiffs contend the district court's reliance on the *Horton* standard is misplaced because the Fifth Circuit in *Horton* specifically limited its decision stating:

> We intimate no opinion as to the standards to be applied when a school official acts at the request of police, calls in the police before searching, or turns over the fruits of his search to the police. In that situation, when there is some component of law enforcement activity in the school official's action, the considerations may be critically different.

*Horton*, 690 F.2d at 481, n. 19.

■ In this case, the Tarters correctly point out, the police had been summoned to the scene and had taken away two other students. In addition, the defendants had again called the police to the scene with respect to David Tarter. It should be noted, however, that the school officials were not acting on direction of the police, nor was anything from Tarter's person turned over to police. Plaintiffs argue, however, that the reasonable cause standard is not applicable and the probable cause warrant requirement should have applied because the school officials clearly intended to turn over any incriminating evidence to the po-

---

**5.** In *Doe v. Renfrow* the district court had determined that defendants had no reasonable cause to believe plaintiff possessed contraband. 631 F.2d at 92.

**6.** The Seventh Circuit in *Doe* considered and rejected the district court's position in that case that defendants were entitled to "good faith" immunity from damages under the doctrine of *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) *reh'g denied* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975) which held

that in the context of school discipline a school board member will only be liable for a damage award in a § 1983 action if he acted with an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot be reasonably characterized as being in good faith.

The district court in the case at bar did not address the immunity issue, nor do we. *See infra*, note 7.

lice, and thus were themselves effectively acting as law enforcement officers.

Plaintiffs express a legitimate concern. The presence of the police officers does take this case purely out of the context of school officials seeking to maintain an environment conducive to the educational process as in *Horton.* Here, as is often the case, the school rules overlapped the criminal law. However, in the context of this case we decline to pass directly on the question of what fourth amendment standards would be applicable where the fruits of a search are turned over to law enforcement officials and used in proceedings against the student searched. *Cf. State in the Interest of T.L.O., supra* (adopting "reasonable cause" standard for search where fruits of search were used in proceedings against student). This case simply does not present such a question. This is not a criminal proceeding; no evidence is sought to be excluded; indeed, no incriminating evidence was ever discovered on David Tarter's person. For a discussion of these issues see Annotation "Admissibility, in Criminal Case, of Evidence Obtained By Search Conducted By School Official or Teacher," 49 A.L.R.3d 978 (1973), and La-Fave, *supra.*

Although the police had been called with regard to David Tarter, it was because the school officials discontinued their search when David said he would not continue his "cooperation." The involvement of the police with respect to plaintiff was marginal. Their presence does not suggest that a standard other than reasonable cause ought to be adopted. For purposes of a § 1983 action for damages, we decline to draw the distinctions from *Horton* urged by appellants. The propriety of such a search in the context of excluding evidence obtained therefrom in a subsequent criminal proceeding against the student is currently a question before the Supreme Court in *New Jersey v. T.L.O., supra,* and is not before this Court in this § 1983 action.

We hold that Raybuck and Spargur had reasonable cause to search David Tarter under the circumstances set forth above and that the search was reasonable. Accordingly, we affirm the decision of the district court in this respect, although on grounds different from those relied on by the district court.[7]

### III.

Appellants also assert the district court erred in awarding attorneys fees to the prevailing defendants pursuant to 42 U.S.C. § 1988. This statute provides the court with discretion to allow the prevailing party reasonable attorneys fees.[8] Although the language of the statute does not distinguish between a prevailing plaintiff and a prevailing defendant, the legislative history and relevant case law demonstrate the standards are distinct.

The legislative history reflects the primary purpose of the provision is to provide an opportunity for private citizens to vindicate important constitutional rights. The provision passed in the Civil Rights Attorney's Fees Awards Act of 1976, P.L. 94–559, 90 Stat. 2641 was enacted in response to the Supreme Court decision of *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d

---

7. Because we conclude that defendants had reasonable cause to conduct the search and the search itself was reasonable, we need not address the question of whether under *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) the defendants would have been entitled to good faith immunity from an award of damages. The issue was not presented to the district court, nor was it presented to this court. *Cf. Doe v. Renfrow,* 631 F.2d 91, 92–93 (7th Cir.1980), *cert. denied,* 451 U.S. 1022, 101 S.Ct. 3015, 69 L.Ed.2d 395 (1981) wherein the Seventh Circuit reversed a ruling by the district court that defendants were immune from mone-

tary damages under *Strickland* where the court found no reasonable cause to conduct a search of plaintiffs.

8. 42 U.S.C. § 1988 provides in pertinent part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

141 (1975) applying the "American Rule" (that each party bears his own legal expenses) for attorneys fees where private parties seek to vindicate federal rights, absent a specific congressional provision granting the authority to award such fees. *See* Sen.Rep. No. 94–1011, 2–5 (1976) *reprinted in* 1976 *U.S.Code Cong. & Ad. News*, 5908, 5910–12. The Senate Report stated further:

It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 [88 S.Ct. 964, 966, 19 L.Ed.2d 1263] (1968).

\*   \*   \*   \*   \*   \*

Such "private attorneys general" should not be deterred from bringing good faith actions to vindicate the fundamental rights here involved by the prospect of having to pay their opponent's counsel fees should they lose.

\*   \*   \*   \*   \*   \*

This bill thus deters frivolous suits by authorizing an award of attorneys' fees against a party shown to have litigated in "bad faith" under the guise of attempting to enforce the Federal rights created by the statutes listed in S. 2278. *Id.* at 5912 (footnote omitted).

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court articulated what has become the standard basis for awarding attorneys fees to prevailing defendants in civil rights cases. The Court stated: "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421, 98 S.Ct. at 700. In other language the Court

stated: "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* at 422, 98 S.Ct. at 701.

While the Supreme Court in *Christiansburg* was addressing the question of the standard applicable to the attorneys fee provision of section 706(k) of Title VII of the Civil Rights Act of 1964, 78 Stat. 261, 42 U.S.C. § 2000e-5(k), the provisions are virtually identical to those of § 1988 at issue in this case.

In *Hughes v. Rowe*, 449 U.S. 5, 14–15, 101 S.Ct. 173, 178–179, 66 L.Ed.2d 163 (1980) (per curiam) the Court applied the *Christiansburg* test in actions brought pursuant to § 1983, although the plaintiff in *Hughes* was an uncounseled prisoner, the Court's language is clear:

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 [98 S.Ct. 694, 54 L.Ed.2d 648] (1978), we held that the defendant in an action brought under Title VII of the Civil Rights Act of 1964 may recover attorney's fees from the plaintiff only if the District Court finds "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.*, at 421 [98 S.Ct. at 700]. Although arguably a different standard might be applied in a civil rights action under 42 U.S.C. § 1983, we can perceive no reason for applying a less stringent standard. The plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.

*Id.* 449 U.S. at 14, 101 S.Ct. at 178.

The application of the *Christiansburg* standard for the award of attorneys fees to defendants under § 1988 has been adopted by numerous courts. *See e.g. Campbell v. Cook*, 706 F.2d 1084, 1086 (10th Cir.1983); *Doe v. Busbee*, 684 F.2d 1375, 1378–80 (11th Cir.1982); *Werch v. City of Berlin*,

673 F.2d 192 (7th Cir.1982); *Reichenberger v. Pritchard,* 660 F.2d 280 (7th Cir.1981); *Bowers v. Kraft Foods Corp.,* 606 F.2d 816 (8th Cir.1979); *Lopez v. Arkansas County Indep. School Dist.,* 570 F.2d 541 (5th Cir. 1978).

The Supreme Court's test in *Christiansburg, supra,* however, must be read in context with other language in the Court's opinion stressing that the underlying purposes of § 1983 and § 1988 not be undermined in awarding fees to prevailing defendants too freely. The Supreme Court cautioned:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

434 U.S. at 421–422, 98 S.Ct. at 700–701.

The decision to award attorney's fees is committed to the discretion of the trial judge. 42 U.S.C. § 1988; *Christiansburg Garment,* 434 U.S. at 421, 98 S.Ct. at 700; *Harrington v. DeVito,* 656 F.2d 264, 266 (7th Cir.1981); *Obin v. District 9 of Internat. Ass'n, Etc.,* 651 F.2d 574 (8th Cir.1981); *Muscare v. Quinn,* 614 F.2d 577, 579–80 (7th Cir.1980); *Konczak v. Tyrrell,* 603 F.2d 13, 19 (7th Cir.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980) as is the amount of the fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40

(1983). The standard of appellate review of a district court's award of attorney's fees to a prevailing party under § 1988 is whether the trial court abused its discretion in making or denying the award. *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981) (award to prevailing defendants); *Olitsky v. O'Malley,* 597 F.2d 303, 305 (1st Cir.1979). *See Christiansburg Garment, supra,* 434 U.S. at 421, 424, 98 S.Ct. at 700, 701; *Tonti v. Petropoulous,* 656 F.2d 212, 217 (6th Cir.1981); *Obin v. District 9 of Internat. Ass'n, Etc.,* 651 F.2d 574, 586 (8th Cir.1981).

The Seventh Circuit has articulated several factors an appellate court may consider when determining whether the trial court properly exercised its discretion in applying the *Christiansburg* standards:

> In seeking to determine whether a suit is frivolous, unreasonable or groundless, courts have focused on several factors. Among those considered are whether the issue is one of first impression requiring judicial resolution, *Christiansburg,* 434 U.S. at 423–24, 98 S.Ct. at 701; whether the controversy is sufficiently based upon a real threat of injury to the plaintiff, *Olitsky,* 597 F.2d at 305; whether the trial court has made a finding that the suit was frivolous under the *Christiansburg* guidelines, and whether the record would support such a finding, *see, e.g., Vorbeck v. Whaley,* 620 F.2d 191, 193 (8th Cir.1980).

*Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981).

We examine the district court's award of attorneys fees, cognizant of the Supreme Court's heed of caution regarding the award of fees to a prevailing defendant articulated in *Christiansburg;* mindful of the legislative history of 42 U.S.C. § 1988 in the context of the overall purpose behind the civil rights provisions; aware of the factors articulated by the Seventh Circuit in *Reichenberger,* and with due recognition of the limited scope of our review.

The district court recognized that the *Christiansburg* standard was the appropriate standard for determining whether de-

fendants were entitled to attorneys fees under § 1988. *Tarter v. Raybuck*, 556 F.Supp. 625, 631 (N.D.Ohio 1983). The district court then examined plaintiff's complaint in light of this standard. With respect to the expulsion of David Tarter and plaintiffs' prayer for an order compelling defendants to readmit David to school, the district court wrote:

> Pursuant to R.C. 3313.66 et seq., the plaintiff parents appealed the expulsion to the Board of Education of Cuyahoga Falls. Considerable testimony was taken with respect to that appeal. See Exhibit H. A study of the record of the expulsion hearing before the Board of Education fails to reveal any factual basis to warrant the filing of a complaint alleging conduct on the part of the defendants actionable under 42 U.S.C. § 1983.
>
> The plaintiffs' complaint prayed for relief including an order from this Court compelling the defendant school board and defendant school administrators to permit the plaintiff David Tarter to reenter Cuyahoga Falls High School. The complaint was filed in September of 1981 after David Tarter, as a matter of law, was eligible to return to school because his expulsion was for only the semester, consistent with the provisions of Ohio Revised Code § 3313.66. The fact that the expulsion was for only the period of a semester was clearly indicated by a letter mailed to the plaintiffs following the expulsion. See Exhibit 5. Nonetheless, the student David Tarter made no attempt to reenter Cuyahoga Falls High School. His parents failed to make any inquiry on behalf of David Tarter calculated to bring about his reentry into Cuyahoga Falls High School. The defendants took no action which in any way could have been construed as an attempt to prohibit David Tarter from returning to Cuyahoga Falls High School.

556 F.Supp. at 631–32.

▪ It was readily apparent from the letter to plaintiffs from the Superintendent of Schools that the expulsion was for the balance of the spring 1981 semester. Thus

the complaint, not filed until September 1981, was meritless to the extent it sought an order to compel defendants to permit David Tarter to reenter Cuyahoga Falls High School. Nothing was ever alleged or shown which might have conceivably been characterized as action by defendants to deny David Tarter reentry.

Furthermore, we entirely agree with the district court that the "claim that David Tarter and his parents were wrongfully detained in the high school clinic is patently without merit." 556 F.Supp. at 632.

▪ We turn then to the district court's discussion of the merits of plaintiffs' fourth amendment claim. The district court's only consideration of awarding attorneys fees to defendant with respect to the search issue was as follows:

> It is without dispute that the search of David Tarter on the morning of March 3, 1981, ceased immediately upon his revocation of the consent that he had earlier given to a search of his person.

556 F.Supp. at 632.

As previously stated we are not inclined to resolve this case on the finding that David Tarter freely consented to the search. In examining this claim in light of standards enunciated in *Christiansburg*, we hold the district court abused its discretion in awarding attorneys fees to defendants in this case. First, we cannot conclude that this action was wholly meritless or without foundation. *See Christiansburg, supra.* We specifically note that the issue of a student's fourth amendment rights in the context of a search by a school official is not a well settled area of the law in the country or in this circuit. This factor mitigates against an award to defendants. *See Reichenberger, supra.* Indeed, the United States Supreme Court has scheduled for reargument next term a case which may address directly a factual situation not unlike the case at bar. The question the Court has directed to be considered in ordering reargument is essentially whether an assistant principal violated a student's fourth amendment rights when he searched her purse based upon informa-

tion from a teacher that the student had been smoking in the girl's bathroom in contravention of school rules. *See New Jersey v. T.L.O.*, 52 U.S.L.W. 3935 (June 26, 1984) scheduling the case for reargument.[9] Finally, as suggested in *Reichenberger, supra*, the district court did make a finding that the suit was frivolous under the *Christiansburg* guidelines. However, we cannot conclude the record adequately supports such a finding. The district court's analysis of the award with respect to the fourth amendment claim was limited only to his determination that because consent was freely given, plaintiff's claim was groundless. 556 F.Supp. at 632. As we have previously discussed, plaintiffs' case was not so easily resolved. Although plaintiffs' claim ultimately proved unsuccessful, it was not so meritless or without foundation that defendant was properly awarded attorney's fees as the prevailing party in this case in light of the legislative history behind section 1988, the Civil Rights statutes, and the *Christiansburg* standards enunciated by the Supreme Court.

*Christiansburg* warns that judges not engage in *post hoc* reasoning to justify such an award. 434 U.S. at 422, 98 S.Ct. at 700–701. "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* "Decisive facts may not emerge until discovery or trial." *Id.*

We conclude this lawsuit is the type of case contemplated by the Supreme Court in enunciating the words of caution just quoted. The issue of consent was reasonably in dispute given the context of the purported waiver of important constitutional rights. The exact nature and extent of a student's fourth amendment rights are not well settled. Furthermore, there is no definitive standard established on when school officials may undertake incursions on traditional fourth amendment protections, in order to maintain school order and discipline. Also, the presence of the police at the high school surrounding the time of the incident in question raised a legitimate question of whether the standard of conduct of the school officials was the same as for police officials. That the district court or this court ultimately declined to adopt the positions urged by plaintiffs on these questions is not tantamount to concluding defendants are entitled to an attorneys fees award under section 1988.

We hold therefore, that the district court abused its discretion in awarding defendants judgment on their counterclaim for attorneys fees pursuant to 42 U.S.C. § 1988.

## IV.

We conclude that there was reasonable cause for the defendants to conduct a search of David Tarter under the circumstances of this case, and the extent of the search actually undertaken was reasonable. Thus, we affirm the district court in rendering judgment in favor of defendants with respect to the claims of plaintiffs. However, we conclude the district court abused its discretion rendering judgment in favor of defendants on their counter-claim for attorneys fees pursuant to 42 U.S.C. § 1988. The judgment of the district court is *affirmed* in part and *reversed* in part. Both sides will bear their own costs on this appeal.

---

**9.** As noted, *supra* at Note 3, the issue was not initially before the Court. Rather the issue initially presented was only whether the exclusionary rule applied where the state sought to introduce that evidence in a subsequent criminal proceeding.