NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0563n.06

No. 18-3793

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 07, 2019
DEBORAH S. HUNT, Clerk

SCOTTIE A. BAGI, et al.,

  Plaintiffs-Appellants,

v.

CITY OF PARMA, OHIO,

  Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

**BEFORE: BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.**

**PER CURIAM.** Plaintiffs Scottie A. Bagi and Gary Vojtush brought a First Amendment retaliation claim against their employer, Defendant City of Parma (the City), under 42 U.S.C. § 1983. The district court granted summary judgment to the City, and we affirmed. Plaintiffs now appeal the district court's orders assessing $173,125.50 in attorney fees against Plaintiffs under 42 U.S.C. § 1988. We **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings.

**BACKGROUND**

**I. Factual Background**

Plaintiffs are firefighters and medics for the Parma Fire Department (PFD). The PFD has a "Tactical Emergency Medical Specialist" (TEMS) unit staffed by internally selected firefighter/medics who are appointed by the Fire Chief. *Id.* at 2. In 2004, the PFD held a test to select firefighters for the unit. Captain Poznako administered the test, which included a written portion. Bagi took and failed the written test.

Bagi and some other firefighters had concerns about the way the 2004 test was administered. Bagi believed that Captain Poznako had taken steps to manipulate the test and give certain people a higher score, and others testified to hearing rumors that the test was unfair. Between 2004 and 2010, Bagi brought his concerns to three union presidents, each of whom looked into the 2004 test and discovered no impropriety.

In June 2011, the PFD announced an opening on the TEMS unit and administered another competitive exam. Bagi did not take the test because he believed that the person who would be selected for the team had been pre-determined. In early July 2011—before the TEMS-unit test was administered—Bagi drafted a letter expressing his concerns that the test would be administered unfairly. Specifically, Bagi expressed concern that Captain Poznako would select Firefighter Fetter—who had fewer years of experience than other firefighters applying—because Fetter was Poznako's friend. Bagi also reiterated his concern that Poznako had favored his friends in selecting TEMS-unit members in 2004, stating, "many are under the belief that Captain Poznako gave the answers, or at least identified the areas to specifically study, to his friends and close associates so they could perform well on the test." R. 70-2, PID 1172. Bagi, Vojtush, and five other firefighters signed the letter. Several of the signatories, including Vojtush, testified that they either did not read or only partially read the letter before signing it.

Firefighters Fetter and Iacoboni received the highest scores on the 2011 test and were offered positions on the TEMS unit. After Fetter and Iacoboni were selected, Bagi had the letter delivered to Chief French. Bagi also sent a copy of the letter to the Human Resources Director with a cover letter expressing his concerns that Chief French and Captain Poznako would retaliate against him for writing and sending the letter.

Assistant Chief Ryan investigated the letter's allegations. Ryan concluded that the allegations in the letter were false, that none of the signatories could provide any evidence to support the assertions in the letter, and that the assertions were based on rumor. Following Ryan's investigation, the City investigated the letter's signatories. Chief French brought charges against Bagi and Vojtush and recommended that their employment be terminated. In October 2012, after pre-disciplinary hearings, Safety Director Baeppler suspended Bagi for thirty-four tours and Vojtush for thirteen tours. The remaining signatories to the letter were suspended for two tours.

Bagi grieved the suspension. The arbitrator concluded that Bagi's assertions of impropriety were false and based on "nothing more than suspicions." R. 54-35, PID 511-12. However, the arbitrator rejected the City's claims that Bagi "made the charges knowing that they were false" and that his actions were "motivated by malice."[1] *Id.* at 512. Based on guidance from a policy manual, consideration of the less severe penalties imposed on other signatories, and Bagi's "length of service and clean record," the arbitrator in February 2014 reduced Bagi's suspension to eight tours. *Id.* at 52-21. The arbitrator reduced Vojtush's suspension to two tours, finding that, like the other signatories who had received a two-tour suspension, Vojtush's involvement with the letter was limited to signing it.

## II.    Procedural History

Plaintiffs brought this action against the City in March 2014, alleging one count of First Amendment retaliation under 42 U.S.C. § 1983.[2] A plaintiff claiming First Amendment retaliation must make a prima facie showing that: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness

---

[1] When asked later whether he believed Bagi intentionally made false accusations when writing the letter, Chief French testified, "I believe he felt there was some truth to the basis of it." R. 55-1, PID 696.

[2] Vojtush also brought one claim of retaliation under the Family and Medical Leave Act, but voluntarily dismissed that claim.

from continuing to engage in that conduct; [and] (3) . . . the adverse action was motivated at least in part by his protected conduct." *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (citation omitted).

In August 2016, the district court granted summary judgment for the City. *Scottie Bagi, et al., v. City of Parma*, No. 1:14 CV 558, 2016 WL 4418094, *15 (N.D. Ohio Aug. 19, 2016). The district court held that, although public employees are not required to prove the truth of their statements to benefit from the protections of the First Amendment, Plaintiffs' statements were outside the realm of constitutional protection because Plaintiffs made them with reckless indifference to their falsity. *Id.* at *14 (citing *Westmoreland v. Sutherland*, 662 F.3d 714, 721 (6th Cir. 2011)).[3] The court rested its conclusion on its findings that: Bagi wrote and signed the letter despite having no first-hand knowledge that the assertions therein were true; Vojtush signed the letter without reading it, having heard only rumors; when he wrote the letter, Bagi knew that investigations into the 2004 test had uncovered no evidence of wrongdoing; Bagi did not take the 2011 test and turned down the opportunity to attend an informational meeting to learn more about its administration; Bagi misled other signatories as to the letter's purpose and contents; and Plaintiffs wrote and signed the letter without regard to its consequences for the PFD and individual firefighters. *Id.* at *14-*15. Thus, the court held that, because the letter was written with reckless disregard to its falsity, it was not constitutionally protected speech.

Plaintiffs appealed. We affirmed on different grounds, holding that Plaintiffs' speech was not protected because "Bagi's letter concerned personnel and internal policy issues, not matters of public concern." *Bagi v. City of Parma*, 714 F. App'x 480, 486 (6th Cir. 2017). We noted that Plaintiffs had not claimed that "Fetter was unqualified or that the administration of the 2011 test

---

[3] The City did not dispute that Plaintiffs suffered adverse consequences because of their speech (the letter).

put the members of the SWAT team or the public at risk," and that "Bagi's personal interest *qua* employee appears plainly to predominate over his interest . . . as a member of the public." *Id.* at 486-87. We did not reach the question whether Plaintiffs spoke with reckless indifference to the falsity of their statements.

While the district court's decision was pending on appeal, the City moved for attorney fees pursuant to 42 U.S.C. § 1988. The district court granted the motion for fees, explaining:

> As summarized briefly above—and discussed at length in the Court's Memorandum Opinion dated August 19, 2016— Firefighters Bagi and Vojtush had zero evidence of any wrongdoing by Captain Poznako or Firefighter Fetter prior to drafting and signing the Letter at the center of this lawsuit. There was nothing at all to substantiate the accusations made therein. The allegations were investigated within the Fire Department and the Parties proceeded to arbitrate their claims . . . . Each time, the investigation of Plaintiffs' accusations revealed no evidence of wrongdoing.
>
> Despite not having any evidence to support the allegations they made against Captain Poznako and Firefighter Fetter, Plaintiffs then filed this lawsuit, forcing the City to once again address Plaintiffs' meritless claims against Captain Poznako and Firefighter Fetter and defend itself against baseless claims that Plaintiffs' First Amendment rights had been violated. Firefighter Bagi drafted—and both he and Firefighter Vojtush signed—the Letter without any evidence that the serious and damaging accusations contained therein were true and neither acknowledged the fact that the allegations were repeatedly investigated and found to be baseless. The City was forced to expend significant resources . . . The First Amendment under these facts and circumstances does not protect statements that are false or statements that are made with reckless disregard for their falsity. There was no basis for this lawsuit. Accordingly, the City is entitled to attorneys' fees . . . .

R. 101, PID 1783-84. The City submitted documentation of fees totaling $139,903.50. Plaintiffs objected to the appropriateness and amount of the fees and sought a hearing and time for limited discovery.

5

After prevailing on appeal, the City filed a motion for supplemental fees accrued on appeal. Plaintiffs responded with a motion for reconsideration, arguing that their claim was not frivolous and that no award of fees was warranted, and renewing their request for discovery and a hearing on the reasonableness of the fee award. Plaintiffs also raised the issue of their inability to pay an assessment of attorney fees in the six-figure range on their salaries as firefighters. The district court denied Plaintiffs' motion for reconsideration and granted the motion for additional fees. The court explained:

> The First Amendment does not protect false statements or statements made with reckless indifference to their falsity . . . . As previously determined by this Court, the Letter drafted by Mr. Bagi included serious and damaging accusations against others which Plaintiffs either knew, or should have known, to be false, and the statements made therein were not entitled to First Amendment protection. Further, the Sixth Circuit held that regardless of whether or not the statements were false or made with reckless disregard to their falsity, the subject matter of the Letter did not touch on a matter of public concern. The serious allegations made in the Letter were false and Plaintiffs' claims in this case were both unreasonable and without foundation. The Court finds no basis upon which to revisit its prior ruling and no basis upon which to deny the City's request to supplement its attorney fees calculation. This is precisely the type of case in which an award of attorney fees is both warranted and appropriate.

R. 116, PID 1958-59. Following additional submissions by the City, the district court found that limited discovery and a hearing were not necessary or warranted and awarded the City a total of $173,125.50 in fees.

## DISCUSSION

### I.    Standard of Review

This court reviews a district court's award of attorney fees under an abuse of discretion standard. *Wilson-Simmons v. Lake Cty. Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000). "In light of a district court's superior understanding of the litigation and the desirability of avoiding

frequent appellate review of what are essentially factual matters, an award of attorneys' fees under § 1988 is entitled to substantial deference." *Id.* (quoting *Reed v. Rhodes*, 179 F.3d 453, 469 n. 2 (6th Cir. 1999).

## II. Whether the District Court Abused its Discretion in Awarding Fees to the City

An award of attorney fees to a defendant in a civil-rights action "is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. The Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). In *Christiansburg Garment Co. v. EEOC*, the Supreme Court held that attorney fees should not be assessed against a civil-rights plaintiff unless the action is "frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became so." 434 U.S. 412, 421 (1978).[4] Application of these standards requires examining a plaintiff's basis for filing suit, and awards to prevailing defendants depend on the factual circumstances of each case. *Smith v. Smyth-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985). Although a finding that a plaintiff brought a claim in bad faith will warrant an award of attorney fees, an action may be frivolous, unreasonable, or without foundation even if brought in good faith. 434 U.S. at 421. The *Christiansburg* Court cautioned that district courts should "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* The Court explained that "[t]his kind of hindsight logic could discourage all but the most airtight claims." *Id.*

Plaintiffs argue that the district court relied on post hoc reasoning in awarding fees to the City. Plaintiffs rely on *Riddle v. Egensperger*, 266 F.3d 542, 551 (6th Cir. 2001), where we reversed a district court's award of attorney fees to prevailing defendants in a civil-rights action

---

[4] *Christiansburg* involved an award of attorney fees to a prevailing defendant in an action brought under Title VII of the Civil Rights Act. In *Hughes v. Rowe*, the Supreme Court extended the *Christiansburg* standards to actions brought under 42 U.S.C. § 1983. 449 U.S. 5, 14-15 (1980).

after finding that the district court impermissibly relied on hindsight. Plaintiffs note that like the defendants in *Riddle*, the City did not move to dismiss their claim. They also point out that, as in *Riddle*, the district court did not use the word "frivolous" until it granted the City's motion for fees. Although we are mindful of the *Christiansburg* Court's warning against relying on post hoc reasoning, we cannot say based on these factors alone that the district court relied on hindsight logic in this case. The district court consistently found that Plaintiffs' First Amendment claim was "wholly without merit" and "baseless," and that there was no evidence to support it. R. 90, PID 1668; R. 101, PID 1784. The record supports those findings; Plaintiffs admitted that they wrote and signed the letter without any direct knowledge that the statements made were true.

Moreover, at the time Plaintiffs brought this action the law in this Circuit was settled that the First Amendment does not protect statements made with reckless indifference to their falsity. *See Westmoreland v. Sutherland*, 662 F.3d 714, 721 (6th Cir. 2011) (the First Amendment does not protect employee "statements [made] with knowledge of, or reckless indifference to, their falsity"). In reviewing a district court's award of § 1988 fees to defendants, we have previously considered whether the area of law underlying a plaintiff's claim is well-settled. *See Tarter v. Raybuck*, 742 F.2d 977, 988 (6th Cir. 1984) (overturning an assessment of fees against a § 1983 plaintiff where the nature of the plaintiff's Fourth Amendment rights were not well-settled). In this case, that factor favors upholding the award.

We conclude that the district court did not abuse its discretion in awarding fees on the ground that Plaintiffs' suit was frivolous, unreasonable, or groundless under the *Christiansburg* standards.

**III.** **Whether the District Court Abused its Discretion by Denying Discovery or a Hearing**

Plaintiffs argue that the district court abused its discretion by denying limited discovery or a hearing on the reasonableness of the fee award. We disagree. Although limited discovery and a hearing on the issue of attorney fees is often appropriate, Plaintiffs have not identified what information they would have sought had discovery been permitted. Instead, they argue only that "discovery on the reasonableness of the fees" was warranted. Appellants' Br. at 23. On these facts, we find no basis to conclude that the district court abused its discretion in denying Plaintiffs discovery and a hearing on the reasonableness of the fee award.

**IV.** **Reasonableness of Fee Award**

Finally, Plaintiffs argue that the district court's failure to address Plaintiffs' ability to pay the considerable fee award rendered its explanation inadequate.

"The starting point for determining a reasonable [attorney] fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983)). "The district court's calculation of the lodestar . . . deserves substantial deference, but only when the court provides a clear and concise explanation of its reasons for the fee award." *Id.* (internal quotations omitted). When fees are assessed against plaintiffs in a civil-rights action, concerns about the reasonableness of the award are "heightened" because "such an award is an **extreme sanction**." *Garner v. Cuyahoga Cty. Juv. Ct.*, 554 F.3d 624, 643 (6th Cir. 2009) (emphasis in original).

In *Garner v. Cuyahoga County Juvenile Court*, we reviewed the reasonableness of a district court's award of fees to a prevailing defendant in a § 1983 case. *Id.* at 642. Like Plaintiffs here, the *Garner* plaintiffs did not take issue with the district court's basic calculation of the lodestar

value; instead, they argued that the district court abused its discretion by failing to consider their abilities to pay. *Id.* We held that although the plaintiffs had the burden to prove their inability to pay, the district court's failure to address information in the record regarding the plaintiffs' modest salaries amounted to a failure to adequately explain its reasons for the award, which made meaningful appellate review impossible. *Id.* at 643. We therefore declined to grant deference to the district court's calculations and remanded for consideration of the plaintiffs' abilities to pay. *Id.*

Although Plaintiffs did not provide documentation of their income, Plaintiffs did raise the issue of the parties' disparate means in their Memorandum in Opposition to the City's initial Motion for Bill of Costs and Fees and their response to the City's Supplemental Motion for Fees. The district court, however, did not address Plaintiffs' ability to pay anywhere in its opinions. As in *Garner*, that omission makes it impossible for this court to determine whether the issue was considered or properly analyzed. Because the district court failed to provide a "clear and concise explanation of its reasons for the fee award," we remand to allow Plaintiffs an opportunity to demonstrate their inability to pay and the district court to reconsider the amount of fees assessed. *Id.* at 643. We are satisfied that the assigned district judge can assess the appropriate award objectively.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's finding that the City should be granted attorney fees under § 1988. With respect to the reasonableness and amount of the award, we **VACATE** and **REMAND** with instructions to allow Plaintiffs an opportunity to demonstrate their inability to pay.

10

**HELENE N. WHITE, Circuit Judge, dissenting**. I concur in the per curiam opinion except as to Section II. Because the district court failed to correctly apply *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), and there was some basis for Plaintiffs' claim, I would reverse the award of fees.

In assessing fees against Plaintiffs, the district court focused on the falsity of the allegations made in the 2011 letter. Specifically, the court found that the lawsuit was meritless, and an award of fees against Plaintiffs was warranted, because Plaintiffs "had zero evidence of any wrongdoing" by the PFD and brought this lawsuit anyway, thereby "forcing the City to once again address Plaintiffs' meritless claims against Captain Poznako and Firefighter Fetter and defend itself against baseless claims that Plaintiffs' First Amendment rights had been violated." R. 101, PID 1783-84.

This was a misapplication of the *Christiansburg* standards. The district court's statement that the Plaintiffs' lawsuit "forc[ed] the City to once again address Plaintiffs' meritless claims against Captain Poznako and Firefighter Fetter" is incorrect. R. 101, PID 1784. Plaintiffs' First Amendment claim alleged that they suffered adverse employment consequences because of their protected speech; this claim is different from the allegations they made within the PFD against Poznako and Fetter. The district court should have focused not on whether Plaintiffs presented evidence to support the allegations in the letter, but on whether they had any basis to bring a First Amendment retaliation claim. *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985). Plaintiffs' actions leading up to the suit are only part of that inquiry; the district court should have also examined whether the City's actions could reasonably have led Plaintiffs to believe they had a basis for bringing their claim. *Riddle v. Egensperger*, 266 F.3d 542, 558 (6th Cir. 2001) (Clay, J., concurring).

There was at least some basis in the record for Plaintiffs to bring this action. Plaintiffs unquestionably experienced adverse consequences because of their speech, including suspensions that the arbitrator concluded were unduly severe. As Chief French testified and the arbitrator concluded, Plaintiffs believed there was some truth to the assertions made in the letter. Even accepting that their assertions were in fact not true, this concession and the arbitrator's statement gave Plaintiffs a reasonable basis to dispute that their speech was made with reckless indifference to its falsity. Likewise, given the PFD's status as a public entity and Plaintiffs' concern that Poznako had chosen members of a SWAT team based on favoritism rather than qualifications, Plaintiffs had some basis to argue that their speech was a matter of public concern. The law surrounding public-employee speech is complex, and whether a matter is of public or personal concern is not always apparent. To assess attorney fees against Plaintiffs under these circumstances risks discouraging future plaintiffs from filing suit, thus undermining "the efforts of Congress to promote the vigorous enforcement" of civil rights laws. *Christiansburg*, 434 U.S. at 422.

In sum, the fact that the allegations made by Plaintiffs in the letter were false did not provide the necessary foundation for an assessment of fees against Plaintiffs. Because there was some basis for Plaintiffs' First Amendment retaliation claim, it was not frivolous, unreasonable, or groundless. For these reasons, I conclude that the district court applied the *Christiansburg* standards incorrectly and abused its discretion in awarding fees to the City.