*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0392p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SHANNON BALMER,

                 *Plaintiff-Appellant,*

    *v.*

HCA, INC.; HEALTH CARE INDEMNITY, INC.,
                 *Defendants-Appellees.*

Nos. 04-5688/6199

>

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-01541—Robert L. Echols, Chief District Judge.

Argued: June 8, 2005

Decided and Filed: September 14, 2005

Before: SILER and GIBBONS, Circuit Judges, LAWSON, District Judge.[*]

---

## COUNSEL

**ARGUED:** John D. Schwalb, WILLIAMS & SCHWALB, Franklin, Tennessee, for Appellant. W. Travis Parham, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellees. **ON BRIEF:** John D. Schwalb, WILLIAMS & SCHWALB, Franklin, Tennessee, for Appellant. W. Travis Parham, Robert E. Boston, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellees.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Shannon Balmer appeals the grant of summary judgment and the award of attorneys' fees to Health Care Indemnity, Inc. in this employment discrimination action under Title VII, the Equal Pay Act, and the Tennessee Human Rights Act. For the following reasons, we affirm the district court's grant of summary judgment and reverse the attorneys' fees award.

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

I.

Health Care Indemnity, Inc. ("HCI") is an indirect, wholly-owned subsidiary of HCA, Inc. HCI provides insurance coverage and claims handling for hospitals affiliated or previously affiliated with HCA. HCI provides limited general liability and employment practices insurance coverage to beneficiary hospitals, but approximately ninety-five percent of claims handled by HCI relate to allegations of medical malpractice.

Plaintiff-appellant Shannon Balmer was hired by HCI in April 1999 as a claims supervisor earning an annual salary of $39,500.00. Balmer's responsibilities included processing and monitoring claims from HCI-insured hospitals in various states not including Tennessee. At the time Balmer was hired, she had two and one-half years of limited experience in the insurance industry as a Medicare fraud investigator for CIGNA. Her experience did not meet the requirement of three to seven years of claims experience stated in the advertisement for the position. Frank Halliburton, a male, was hired as a claims supervisor on the same day as Balmer with an annual salary of $50,800.00. Balmer was not aware of Halliburton's starting salary but did inquire into whether HCA was willing to pay her more after a human resources representative informed her that $45,000.00 was at the low end of the salary range for claims supervisors. She was told that her starting salary was not open for negotiation. Balmer often complained about her salary.

In February 2000, Chris Gentile, Balmer's supervisor, and Larraine Gerelick, Gentile's supervisor, positively reviewed Balmer's job performance, resulting in her salary being increased by six percent. Balmer's raise, as a percentage of salary, was higher than the raises given to other claims supervisors. In July or August 2000, at Gerelick's suggestion, Balmer received a "Star Award," which was accompanied by gift certificates valued at $2,331.00. Despite the raise and Star Award, Balmer continued to complain about her pay.

Soon after the February 2000 review, Balmer learned the amount of Halliburton's salary. When Balmer raised the difference between her salary and Halliburton's, she was told that Halliburton was allowed to negotiate his salary because he had more insurance industry experience. Halliburton had worked as a Claims Specialist for the Tennessee School Board Association for eight months immediately preceding his employment with HCI, and, prior to that, he worked for AllState for eleven years. According to Gerelick, Halliburton had substantial experience relevant to his duties as a claims supervisor at HCI warranting his higher starting salary. Halliburton's responsibilities at AllState included reengineering investigation procedures, working with legal counsel, acting as company spokesperson at trials, depositions, and settlement conferences, and responsibility for managing and administering budgets. Halliburton's starting salary at HCI, $50,800.00, was a decrease from his salary at his previous job. Balmer's starting salary of $39,500.00 was an increase from her salary at CIGNA.

In July 2002, HCI announced that six claims supervisors, four females and two males, were being promoted to the position of senior claims supervisor. Balmer pursued one of the positions and alleges that but for her sex she would have gotten the promotion. Later that month, Balmer met with Gerelick to discuss the pay disparity between Balmer and Halliburton. Gerelick acknowledged the disparity but told Balmer that Halliburton had more years of experience in the insurance industry. Gerelick also told Balmer that, though Balmer was doing a much better job than Halliburton, budgetary constraints meant that the disparity could not be rectified until 2001.

Balmer told Gentile that she planned to file a gender discrimination suit against HCI in September 2000. Balmer claims, but the appellees deny, that Gentile told Balmer that he was aware that she had health problems and wondered if she could handle a battle at that time. He also allegedly told her that HCI would come down hard on her or something similar and that it would be difficult for her to find another job in the same field because Gerelick knew so many people in the

industry.  Balmer claims that, following the encounter, Gentile did not return her phone calls, failed to give her authority needed to settle cases, did not respond to her emails, and began keeping track of her time away from the office.

In October 2000, while Balmer was out of town and away from the office for three days, Gentile viewed the contents of Balmer's work-related mail "in-box."  One of the items in the in-box was an invoice from Thompson & Miller, a Louisville law firm that HCI often hires to represent its insureds in medical malpractice actions in Kentucky.  The invoice reflected legal work about employment issues.  Gentile suspected that the legal work was related to Balmer's personal dispute with HCI rather than to HCI hospital claims she was supervising.[1]  Consequently, Gentile contacted Thompson & Miller to request information about Balmer's research request.  In response to his request, Gentile received legal memoranda addressing the precise issues presented by Balmer in her lawsuit.

Gentile also found an earlier Thompson & Miller invoice dated September 15, 2000, related to employment law issues.  Balmer had approved the invoice and submitted it to HCI to be paid as company business.  Gentile inquired into the Thompson & Miller invoices upon Balmer's return to work.  Balmer claims that she had potential claims with Equal Pay Act exposure and had been advised that an unasserted claim for Equal Pay Act exposure existed in a pending case and that Gentile had authorized the Thompson & Miller research.[2]  Gentile discussed the situation with Gerelick, who concluded that Balmer had misused company funds.  Gerelick decided that Balmer's employment should be terminated but stated that she would not have terminated Balmer if the legal research had been authorized by Gentile.  Gerelick met with Balmer on November 21, 2000, and offered her the choice between being terminated or resigning.  Balmer chose to resign.  After resigning, Balmer filed a charge with the Equal Employment Opportunity Commission.

Balmer originally filed suit in the Circuit Court for Davidson County, Tennessee, alleging violations of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq*.  The case was removed to the United States District Court for the Middle District of Tennessee based on allegations in the complaint relating to appellees' claimed violations of federal law.  An Agreed Protective Order was entered on July 30, 2003, designating various documents as confidential and requiring that they be filed under seal.  On November 13, 2003, Balmer filed her First Amended Complaint, alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the THRA.  The First Amended Complaint sought certification of a plaintiff class, as did the original complaint.  Balmer failed to file a motion for class certification by the court-imposed deadline and did not request an extension of that deadline.  Balmer's counsel filed a motion to withdraw on November 25, 2003, which the district court granted on December 5, 2003.  The appellees filed a motion for summary judgment on December 9, 2003.  The district court issued its Memorandum Opinion and Order granting summary judgment to the appellees on April 30, 2004.  Balmer filed a timely notice of appeal.

Balmer also appeals the award of attorneys' fees to appellees.  Appellees filed a motion for attorneys' fees as "prevailing parties" under Title VII.  HCI moved initially for fees in excess of $91,000.00  The trial court held that the claims of retaliation and gender-based wage discrimination were not frivolous, but that the class action allegations, the sexual harassment allegations and the failure to promote claims were frivolous, entitling the appellees to an award of fees.  HCI

---

[1]Gentile's belief that the invoice was for Balmer's personal legal work was based on the subject matter of the invoice, the fact that Balmer supervised few employment claims, the fact that Balmer supervised no Tennessee files, and his personal knowledge of her claims files.

[2]According to Gentile, Balmer was unable to identify any insurance claims under her supervision that involved the Equal Pay Act or sex discrimination.

resubmitted its claim in accordance with the district court's July 8, 2004, order.  In the amended claim, HCI asserted that it was entitled to $8,270.20 in fees where the invoices referenced one or more of the fee-recoverable allegations.  All of these fees were incurred prior to the filing of Balmer's amended complaint.  The appellees also sought $4,166.89, or five percent of the remaining fees, as attributable to the defense of frivolous claims, but which could not be specifically identified as related to such claims.  Balmer opposed the amount requested by the appellees.  The district court awarded the full amount requested in the amended claim.

The district court issued its Memorandum Opinion and Order granting the appellees more than $12,000.00 in attorneys fees on August 24, 2004.  The Clerk entered the final taxation of costs on September 13, 2004.  Balmer filed a timely notice of appeal from the order granting fees and final taxation of costs on September 22, 2004.

II.

A district court's grant of summary judgment is reviewed *de novo*.  *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001).  The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party."  *Id*.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For a dispute to be genuine, the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit."  *Id*.

The standard of review on appeal in an attorneys' fees case is abuse of discretion.  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

A.

Balmer asserted gender-based wage discrimination claims under the Equal Pay Act, Title VII, and the THRA.  The Equal Pay Act prohibits wage discrimination by covered employers "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1).  Balmer has met the burden of establishing a prima facie case under the Equal Pay Act because the "employer paid different wages to an employee of the opposite sex for substantially equal work."  *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).  "However, not all differences in pay for equal work constitute violations" of the EPA.  *Id*.

After a plaintiff establishes a prima facie case of discrimination under the Equal Pay Act, the burden shifts to the defendant to show that one of four affirmative defenses justifies the difference in pay.  *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826 (6th Cir. 2000).  The affirmative defenses are: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any factor other than sex.  *Id*. (citing 29 U.S.C. § 206(d)(1); *Corning Glass Works*, 417 U.S. at 196-97; *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998); *Timmer*, 104 F.3d at 843).  In order to be entitled to summary judgment, the defendant must prove that there is no genuine issue as to whether the difference in pay is due to a factor other than sex.  *EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992).  "[T]he employer must prove that 'sex provides *no part* of the basis for the wage differential'" in order to prevail on summary judgment.  *Timmer*, 104 F.3d at 844 (citing *Brennan v. Owensboro-Daviess County Hosp.*, 523 F.2d 1013, 1031 (6th Cir. 1975)).

Appellees rely on the fourth affirmative defense, a factor other than sex, to argue that the wage differential between Balmer and Halliburton was based on the two individuals' relevant work experience, prior salary history, and requested salary. The Equal Pay Act's catch-all provision "does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988) (citation omitted). A wage differential based on education or experience is a factor other than sex for purposes of the Equal Pay Act. *Hutchins v. Int'l Bhd. of Teamsters*, 177 F.3d 1076, 1081 (8th Cir. 1999); *see also Irby v. Bittick*, 44 F.3d 949, 956 (11th Cir. 1995) (stating that "[e]xperience is an acceptable factor other than sex if not used as a pretext for differentiation because of gender"); *Pouncy v. Prudential Ins. Co.*, 668 F.2d 795, 803 (5th Cir. 1982) ("Different job levels, different skill levels, previous training, and experience: all may account for unequal salaries in an environment free of discrimination."); *Harker v. Utica Coll.*, 885 F. Supp. 378, 390 (N.D.N.Y. 1995) (holding that nine years experience differential between women's and men's basketball coaches justified pay differential). Consideration of a new employee's prior salary is allowed as long as the employer does not rely solely on prior salary to justify a pay disparity. *See Irby*, 44 F.3d at 955 ("If prior salary alone were a justification, the exception would swallow up the rule and inequality in pay among genders would be perpetuated.") (internal quotation marks and citation omitted).

Balmer asserts that the district court, while acknowledging that the burden of proof was on the appellees, impermissibly shifted the burden of production back to Balmer to show that the asserted justification for the wage differential was pretextual. Balmer also argues that HCI did not establish experience as a factor other than sex because "the related experience is absent"[3] and, even if Halliburton had more experience, the defense should not be successful because HCI uses experience as a factor on an *ad hoc* and inconsistent basis. According to Balmer, HCI must show not only that Halliburton had more experience than Balmer, but also "the manner in which Halliburton's additional experience affected his performance." (citing *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 263-64 (3rd Cir. 1970)). Balmer stretches this argument further, stating that "[t]he best indication of the importance of Halliburton's experience is clearly shown in how poorly he performed following a year of performance."

> We agree with the district court's analysis:
>
> Defendants have presented substantial evidence that the difference in the starting salaries of Plaintiff and [Halliburton] was based upon a factor other than sex. Defendants' evidence shows that [Halliburton] asked for a higher salary than Plaintiff, had a higher salary history than Plaintiff, and most importantly, the ultimate decision maker at HCI determined that [Halliburton] had greater relevant industry experience than Plaintiff. The Court finds that Defendants have demonstrated that no genuine issue of fact exists as to whether the difference in pay of Plaintiff and [Halliburton] is due to a factor other than sex. *See Romeo Cmty. Sch.*, 976 F.2d at 989. Defendants have therefore met their burden of proving an affirmative defense under the [Equal Pay Act] by a preponderance of the evidence.

After finding that HCI had met its burden of proving an affirmative defense, the district court correctly stated that "[u]nder Sixth Circuit precedent, Plaintiff now bears the burden of producing evidence creating a triable issue of fact that the reasons proffered by Defendants are pretextual." (citing *Buntin*, 134 F.3d at 800 n.7 ("In an [Equal Pay Act] case, the defendant *always* bears the

---

[3] Balmer's argument with regard to experience seems to be that Halliburton's experience handling auto fire and theft and homeowner theft claims is not relevant experience for handling medical malpractice claims. Balmer claims that "[a]n employer may not rebut prima facie liability by purporting to rely on criteria which measures attributes unrelated to probable job performance." (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971); *Johnson v. Uncle Ben's Inc.*, 628 F.2d 419 (5th Cir. 1981)).

burden of proving that its proffered reason is the true basis for the pay differential.  The [Equal Pay Act] plaintiff bears the burden of *producing* evidence of pretext solely where a reasonable jury viewing the defendant's evidence could find only for the defendant[.]")).

We also agree with the district court's assessment of Balmer's evidence of alleged differences in the pay of other male and female HCI employees.

> Defendants, however, have shown that Plaintiff's contentions regarding other employees are flawed for a number of reasons: she relies on an extremely small sample size; she attempts to compare long time female employees to much more recently hired  male employees; and she fails to take into account the employees' overall qualifications.  In the end, Plaintiff's evidence simply shows that HCI pays some men more than women and some women more than men depending on a variety of factors.  From this evidence no reasonable jury could conclude that the difference between Plaintiff and [Halliburton's] starting salaries was due to sex.

### B.

To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) that defendant knew of this exercise of her protected rights; (3) that defendant consequently took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and adverse employment action. *Fenton v. HiSAN*, 174 F.3d 827, 831 (6th Cir. 1999) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997)).  If a plaintiff establishes a prima facie case of retaliation, the defendant may rebut the presumption of retaliation by asserting a legitimate, non-discriminatory reason for its actions. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000).  The plaintiff must then show by a preponderance of the evidence that the employer's proffered reason for the employment action is pretextual. *Id.*  The plaintiff must produce sufficient evidence from which the jury could "reasonably reject [the defendants'] explanation" and infer that the defendants "intentionally discriminated" against her. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 246-47 (6th Cir. 1997).  The plaintiff must submit evidence demonstrating that the employer did not "'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citing *Smith v. Chrysler*, 155 F.3d 799, 806-07 (6th Cir. 1998)).  To inquire into the defendant's "honest belief," the court looks to whether the employer can establish "reasonable reliance" on the particularized facts that were before the employer when the decision was made. *Smith*, 155 F.3d at 807 ("[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.").  The district court correctly stated:

> If there is no reasonable dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual. *See Braithwaite*, 258 F.3d at 494.

Balmer's retaliation claim was summarized by the district court as follows:

> Plaintiff contends that after she told Mr. Gentile she intended to file a lawsuit against defendants, he made veiled threats about her health problems and her inability to find work in the future.  She contends that he then increased her workload, failed to return her telephone calls, failed to provide her with sufficient settlement authority, was unavailable when she needed to talk to him, and had other employees track her time away from the office.  Plaintiff also contends that Ms. Gerelick retaliated against her

by failing to handle Plaintiff's pay complaints in the manner in which Plaintiff thought they should have been handled.

Balmer argues that the district court failed to consider the retaliatory acts as a whole but instead considered each act separately. The above quote from the district court contradicts this assertion. Furthermore, as the district court points out, some of Balmer's allegations were not supported by the evidence. The district court noted that "[d]uring her deposition, Plaintiff conceded that she had more files than some of her peers but less than others." Also, Balmer "presented no evidence that Mr. Gentile or Ms. Gerelick limited or attempted to limit Plaintiff's ability to find other employment after she resigned from HCI. The evidence shows that Plaintiff found a job with another insurance company at a higher rate of pay within one month of leaving HCI." The district court was also correct in its finding that Balmer's remaining allegations, with the exception of her constructive discharge claim, do not rise to the level of adverse employment actions. *See Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999) ("[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities.") (citation omitted).

Therefore, the only legally cognizable adverse employment action identified by Balmer is her allegedly forced resignation or constructive discharge. Balmer argues that the temporal proximity of her protected activity (complaining about alleged sex-based wage discrimination) to the adverse employment action (her forced resignation) establishes the causal link necessary to a prima facie case of retaliation. However, "the mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir. 1989). Because Balmer did not establish a causal connection between the adverse employment action and her protected activity, she has not established a prima facie case of retaliation.

Even if Balmer were able to establish a causal connection, her retaliation claim would still fail because HCI had a legitimate, non-discriminatory reason for terminating Balmer's employment, and Balmer was not able to show that the reason was pretextual. As the district court stated:

> Even if a genuine issue of material fact remains as to whether Plaintiff improperly used HCI's funds to pay for personal legal research, Plaintiff has put forth no evidence suggesting that Ms. Gerelick, who ultimately made the decision to end Plaintiff's employment, did not "honestly believe" that Plaintiff had misused HCI's funds.

Balmer's argument that Gentile authorized the Thompson & Miller legal research does not support Balmer's assertion that Gerelick lacked an honest belief that Balmer had misused HCI funds. We agree with the district court's conclusion that:

> Plaintiff has not presented any material evidence that Ms. Gerelick did not make a "reasonably informed and considered decision" and did not "honestly believe" that Plaintiff had misused company funds when she decided to end Plaintiff's employment. As such, Plaintiff has not shown that ending Plaintiff's employment was pretextual, and Plaintiff's retaliation claims under Title VII and the THRA fail.

## C.

Title VII gives the court the authority to allow a reasonable attorneys' fee to a prevailing defendant-employer in a discrimination suit brought pursuant to Title VII. 42 U.S.C. § 2000e-5(k); *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 310 (6th Cir. 2003). The standard for granting attorneys' fees to a prevailing employer is more stringent than that for

awarding attorneys' fees to a prevailing employee. *Christiansburg Garment Co.*, 434 U.S. at 417-18.  The employer may be awarded attorneys' fees where the plaintiff's claim was "frivolous, unreasonable, or without foundation," or where the plaintiff continued to litigate after it became clear that her claim was frivolous, unreasonable, or without foundation. *Id*.  Courts should not conclude that a claim was groundless just because it was ultimately unsuccessful. *Id*. at 421-22.

Courts should consider the following factors when making an attorneys' fees determination: (1) whether plaintiff presented sufficient evidence to establish a prima facie case; (2) whether defendant offered to settle the case; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 751 (3rd Cir. 1997). Defendants may recover fees for frivolous claims only. *Gutierrez v. Denver Post, Inc.*, 691 F.2d 945, 948 (10th Cir. 1982) (affirming lower court's award of attorneys' fees to Title VII defendant as to some but not all claims on which defendant prevailed).  Attorneys' fees should be awarded only in the most egregious of circumstances. *See e.g., Gettings*, 349 F.3d at 310 (affirming lower court's award of attorneys' fees to prevailing Title VII defendant where plaintiff knew a claim was barred, yet pursued it anyway).

The district court found that HCI was "entitled to recover attorneys' fees in connection with their defense of some, but not all of Plaintiff's claims."  The district court also noted that Balmer is "a sophisticated plaintiff.  She has a law degree and years of experience supervising insurance claims that often result in litigation. As a result she has first-hand knowledge of the time and costs involved with defending against an employment discrimination lawsuit."  The district court emphasized that Balmer continued to seek class certification "even after learning that the evidence produced in discovery did not support her theories," alleged a sexual harassment claim even though she "admitted in her deposition that she had never been sexually harassed and had never intended to pursue such a claim," and pursued an unreasonable and meritless failure to promote claim.

The district court also noted that HCI informed Balmer of its intent to seek attorneys' fees should it prevail in the matter and offered to waive the anticipated fees and costs if Balmer dismissed the litigation. Balmer rejected the offer and her counsel withdrew shortly thereafter. *See L.B. Foster Co.*, 123 F.3d at 751 (whether defendant offered to settle the case is a factor to consider in determining whether to award attorneys' fees to prevailing defendants). At the time the district court entered its June 21, 2004 opinion, Balmer was being represented by her fifth and sixth attorneys of record; all earlier attorneys chose to withdraw from the case.  The district court stated that "it seems possible if not likely that prior counsel withdrew because Plaintiff was committed to advancing at least one untenable claim." (citing *Owens v. Briggs & Stratton Corp.*, Nos. 99-3953, 99-4015, 2000 WL 1028932, at *2 (7th Cir. July 25, 2000) (affirming award of attorneys' fees to prevailing defendant, noting that plaintiff should have realized that her suit had no chance of success when her attorney withdrew for fear of sanctions)).

The district court did not award attorneys' fees to HCI in relation to Balmer's gender-based wage discrimination and retaliation claims.  The district court concluded that HCI was entitled to recover fees incurred in defending Balmer's sexual harassment claim under Title VII, her gender discrimination claim based on failure to promote under Title VII, and her purported class certification.  The district court found that HCI was entitled to recover $4,458.80 for entries specifically related to the fee recoverable allegations, $3,812.40 for fees related to the fee recoverable allegations, and $4,166.89 for five percent of the total additional work.  The total amount of attorneys' fees awarded to HCI was $12,437.09.

Balmer argues that because the district court found that not all of her claims were frivolous, unreasonable, or without foundation, the trial court abused its discretion in awarding any attorneys' fees to HCI.  There is support for this argument.  This court has previously held that it is an abuse of discretion to award attorneys' fees to a prevailing defendant where any part of the plaintiff's

cause of action was not frivolous.  *Haynie v. Ross Gear Div. of TRW, Inc.*, 799 F.2d 237, 242 (6th Cir. 1986), *vacated as moot*, 482 U.S. 901 (1987) (holding that "where one of the plaintiff's claims is non-frivolous, the defendant's attorney fees may not be shifted to the plaintiff even though others of the plaintiff's claims are patently without merit."); *Tarter v. Raybuck*, 742 F.2d 977, 987-88 (6th Cir. 1984) (holding that awarding attorneys' fees was an abuse of discretion even though some of plaintiff's claims were meritless).

HCI attempts to distinguish *Haynie* and *Tarter*.  In *Haynie*, the court reversed the fee award for the employer but upheld the union's fee award.  699 F.2d at 242-43.  From this result, HCI argues that "*Haynie* held that a plaintiff can be properly ordered to pay a fee award based on a frivolous cause of action, even though she stated a prima facie case on another of her causes of action."  HCI also argues that the portion of *Haynie* relied on by Balmer is merely dicta.  In *Tarter*, the plaintiff brought a cause of action under 42 U.S.C. § 1983 alleging that high school officials had violated his own and his parents' Fourth Amendment rights by searching him and detaining all three of them without consent.  *Tarter*, 742 F.2d at 979.  This court reversed the district court's award of attorneys' fees to defendants, holding that though part of plaintiff's claim was baseless, the cause of action was not frivolous, in part because the contours of the Fourth Amendment in the context of a high school were not well-settled.  *Id*. at 987.  HCI seeks to differentiate the present case from *Tarter* because here Balmer brought several discrete causes of action which were correctly analyzed cause-by-cause by the district court.

We agree with the district court that Balmer's failure to promote and sexual harassment claims were completely without merit and "frivolous, unreasonable, or without foundation." Nevertheless, we reverse the district court's award of attorney's fees to HCI.  Based on the language of *Haynie* and *Tarter*, we conclude that in this circuit attorneys' fees may not be awarded to defendants where the plaintiff has asserted at least one non-frivolous claim.

III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to HCI and reverse the district court's award of attorneys' fees to HCI.