NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0538n.06
Filed: August 1, 2006

**No. 05-3462**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SANDUSKY COUNTY DEMOCRATIC PARTY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| J. KENNETH BLACKWELL, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| Defendant-Appellant. | ) | DISTRICT OF OHIO |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**Before:** **BOGGS, Chief Judge; GILMAN, Circuit Judge; and WEBER, District Judge.**[*]

**PER CURIAM.** Secretary of State of Ohio J. Kenneth Blackwell appeals the award of attorneys' fees and costs to the plaintiffs in this action brought pursuant to the Help America Vote Act (HAVA) in connection with the 2004 presidential election. We affirm the decision of the court below.

**I**

---

[*] The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio.

1

The plaintiffs in this case are political and labor organizations. They filed suit in the months leading up to the 2004 presidential election, arguing that HAVA expanded the right of registered voters to cast "provisional" ballots in federal elections. Though HAVA was enacted on October 29, 2002, it was not until mid-September 2004 that Blackwell issued a directive to county election boards on the subject of compliance with the statute. Once Blackwell did set forth a directive, the plaintiffs successfully sought an injunction requiring Blackwell to issue a revised directive instructing county election boards more completely and accurately as to their HAVA compliance obligations.

After the merits phase of the dispute, and on remand from our court, Sandusky County Democratic Party v. Blackwell, 387 F.3d 565 (6th Cir. 2004), *aff'g in part and rev'g in part*, the district court entered a final order on March 3, 2005, awarding attorney's fees in the amount of $64,613.14 to Appellees pursuant to 42 U.S.C. § 1988. Sandusky County Democratic Party v. Blackwell, 361 F. Supp. 2d 688 (N.D. Ohio 2005). Blackwell filed a timely appeal on attorney's fees on March 31, 2005. We review a district court's award of attorney's fees for abuse of discretion. Balmer v. HCA, Inc., 423 F.3d 606, 611 (6th Cir. 2005)

## II

In this appeal, Blackwell continues to insist that the district court had no jurisdiction in the substantive dispute giving rise to this entire action. Specifically, he argues that appellees had no standing to bring the original suit under HAVA.

We considered this question carefully at the merits phase. We reviewed the question of standing *de novo*, and we ruled in favor of the plaintiffs. Sandusky, 387 F.3d 573-74. Blackwell offers no new argument on this point. He suggests that the court may not have had adequate time

2

to consider the question in the October 2004 litigation, so he re-raises it and devotes considerable space to reiterating matters that our last opinion squarely addressed. We do not change our view now.

## III

Blackwell next argues that the district court abused its discretion in awarding attorneys' fees to appellees on the ground they are not properly considered "prevailing parties" under the terms of 42 U.S.C. § 1988.

A "plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" Farrar v. Hobby, 506 U.S. 103, 111-12 (1992). Our court has explained further that a "technical victory may be so insignificant . . . as to be insufficient to support prevailing party status." Dillery v. City of Sandusky, 398 F.3d 562 (6th Cir. 2005) (quoting Texas State Teachers Assoc. v. Garland Indep. Sch. Dist., 489 U.S. 782 (1989)). However, "even an award of nominal damages suffices." Buckhannon Bd. & Care Home, Inc., v. W. Va. Dep't. of Health and Human Res., 532 U.S. 598, 604 (2001). A preliminary injunction can suffice. *See* Webster v. Sowders, 846 F.2d 1032, 1036 (6th Cir. 1988). A declaratory judgment can suffice. Hewitt v. Helms, 483 U.S. 755, 761 (1987). If, as here, a suit is not a complete success, the plaintiff may still recover for that portion of the costs that are attributable to the successful part of the litigation. *See, e.g.*, Hensley v. Eckerhart, 461 U.S. 424, 440 (1983) (". . . where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.").

Appellees enjoyed a material benefit from the litigation, and this benefit reflected a change in the legal relationship between the parties. First, in our previous opinion in this dispute, our court explicitly recognized a right of action, lying in HAVA and enforceable through 42 U.S.C. § 1983, to compel state officials through federal litigation to satisfy the civil right to "cast a provisional ballot under the circumstances described in HAVA § 302(a)." Sandusky, 387 F.3d at 572. Second, our court interpreted Blackwell's original directive as possibly having the effect of preventing some Ohio electors from casting a provisional ballot, when such was their right under HAVA. *See* Sandusky, 387 F.3d at 574. The panel's ruling prevented the implementation of that effect. As the district court wrote:

> Had this suit not been filed and been successful in its efforts to have Blackwell's provisional voting directives repudiated, provisional voting in Ohio would have met neither the requirements nor objectives of the statute. Moreover, by subsequently agreeing to submit to a permanent injunction, the defendant, solely as a result of this lawsuit, has been forced to ensure that those requirements and objectives will be fulfilled in future elections for federal office in Ohio. This has been accomplished, not through anything he did on his own (because neither the directive he issued nor his reformulated directive complied with HAVA), but solely as a result of this suit and this Court's orders.

Sandusky, 361 F. Supp. 2d at 692.

Blackwell argues that, in order to have "prevailed," appellees must show that their efforts led someone to cast a provisional ballot. He argues that appellees must offer a showing of evidence that one of the named plaintiffs exercised the benefit putatively won through the litigation. The district court has furnished at least one answer for this claim in its opinion:

> The benefit of this suit extends far beyond the named plaintiffs and those whom they represented in a collective capacity; this suit benefits all of Ohio's voters who may someday want to cast a provisional ballot, regardless of for whom they will cast that ballot.

4

361 F. Supp. 2d at 694-95. Blackwell suggests that nothing short of evidence proving that the individually named plaintiffs actually benefitted from the lawsuit would qualify them as prevailing parties. The Secretary cites no law that would require such an evidentiary showing in a case such as ours, and we decline to insist on one.

Our court's previous opinion in this dispute recognized the difficulty of a) building a highly detailed record in this case, and, in particular, b) identifying particular members of the named groups of plaintiffs who would most likely or certainly benefit from the pending litigation. We wrote:

> Appellees have not identified specific voters who will seek to vote at a polling place that will deemed wrong by election workers, but this is understandable; by their nature, mistakes cannot be specifically identified in advance. Thus, a voter cannot know in advance that his or her name will be dropped from the rolls, or listed in an incorrect precinct, or listed correctly but subject to a human error by an election worker who mistakenly believes the voter is at the wrong polling place. It is inevitable, however, that there will be such mistakes. The issues Appellees raise are not speculative or remote; they are real and imminent.

Sandusky, 387 F.3d 574.

In Dambrot v. Central Michigan University, 55 F.3d 1177 (6th Cir. 1999), we upheld attorneys' fees for plaintiff student basketball players (who were named individually in the suit) who won summary judgment on the basis that the university's discriminatory harassment policy violated the First Amendment. Their coach had been punished for using the word "nigger" in a locker room conversation in a manner that did not offend any of the African-American student athletes with whom he was speaking. When he got into trouble with the university for his conduct, they filed suit, alongside him, to challenge the harassment policy that he was charged with violating. The policy was found to be facially unconstitutional. Our court upheld an award for the players even though a) it was conceded that it had never been enforced against them, and b) there was no showing that any of them had "enjoyed" the benefit (i.e. used previously illicit language) since the district court's

5

ruling. Our opinion noted that the legal relationship between the parties had nonetheless changed because the university no longer had the right to prohibit speech. Id. at 1192. The Dambrot case is similar to ours insofar as a) the student plaintiffs had only been *possible* beneficiaries of the litigation (they had not yet been punished by the university, and they had not yet engaged in illicit conduct), and b) there was no showing put forward that they had actually (rather than potentially) benefitted from the district court's constitutional ruling.

**IV**

The parties agree in this case that the district court's award of attorneys' fees was for only that portion of the litigation on which the court found the plaintiff to have prevailed. We affirm the decision of the court below and order that attorneys' fees be paid.